UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CINDY GARCIA-HIGGINS, *et al*, | § § | |
| Plaintiffs, | § § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-00121 |
| | § § | |
| LCS CORRECTION SERVICES, INC., *et al*, | § § § | |
| Defendants. | § § | |

## ORDER

Plaintiffs have brought this case against the Defendants alleging that Michael Higgins, a federal prisoner, died at the Coastal Bend Detention Center in Robstown, Texas because the jailors failed to provide him with necessary medical care. Before the Court is Defendants' Rule 12(b)(1) Motion to Dismiss and Rule 12(c) Motion for Judgment on the Pleadings. D.E. 37. Defendants seek an order that (1) 42 U.S.C. § 1983 does not apply to any conduct in this case because Higgins was a federal, not a state, prisoner thus defeating the "under color of state law" requirement; (2) Plaintiffs have failed to state sufficient facts to support their § 1983 claim under *Twombly* and *Iqbal,* in part because supervisor liability and vicarious liability are not viable claims; and (3) Plaintiffs have failed to state sufficient facts to support their state law claims.

As a preliminary matter, the Court GRANTS the Unopposed Motion of Defendants for Leave to File Reply" (D.E. 70) and the Court has considered the attached Reply (D.E. 70-1). The Court DENIES Plaintiffs' Unopposed Motion to File a Response to Defendants' Reply (D.E. 69) as moot.

For the reasons set out below, the Court DENIES the Motion to Dismiss and Motion for Judgment on the Pleadings (D.E. 37) with respect to the claim that § 1983 does not apply because Higgins was a federal prisoner, DENIES the Motion with respect to the claim that the factual allegations are insufficient to support a § 1983 claim, and DENIES the Motion with respect to the claim that the factual allegations are insufficient to support a state law claim.  The Court DENIES the Motion as moot with respect to any of the claims applicable to the Defendants who are not before the Court.  The Motion (D.E. 37) is therefore DENIED in its entirety.

## SECTION 1983 APPLIES

Defendants claim that, because Higgins was a federal prisoner, 42 U.S.C. § 1983 does not apply.  The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, ***of any State*** or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(emphasis added).  A claim under § 1983 requires proof of "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475 (5th Cir. 2004).

The Motion to Dismiss (D.E. 37) is brought on behalf of "all Defendants."[1] They challenge the Plaintiffs' ability to prove their cause of action based on the last two requirements. LCS Corrections Services, Inc. (LCS) is a private corporation that is alleged to have contracted with Nueces County, Texas to operate a private corrections facility, the Coastal Bend Detention Center, in Robstown, Texas. D.E. 37, p. 2; 41, p. 2; 50, pp. 2, 6; 51, pp. 2-4; 56, p. 2. Captain Damon Thomas is sued as an employee of LCS who was allegedly acting as one of Higgins' jailors at the time of Higgins' medical injury. D.E. 50, p. 3; 57, p. 2. Higgins was incarcerated pursuant to a federal criminal conviction. D.E. 50, p. 6.

Defendants assert that, because Higgins was a federal prisoner, they were exclusively "federal actors" acting only "under color of federal law." Defendants thus focus the inquiry on the status of the complainant to determine what law governs the relationship. Plaintiffs' focus is, instead, on the status of the actor and the source of the actor's authority to inflict the alleged harm. There is case law to support both approaches. This Court is of the opinion that the Plaintiffs' approach is correct and that the Defendants were acting under color of state law with respect to their federal prisoner.

The Supreme Court, in *Lugar v. Edmondson Oil Co.*, addressed three tests of general application for determining whether a private party may be held to be a state actor under § 1983. 457 U.S. 922, 939, 102 S.Ct. 2744, 2754–55, 73 L.Ed.2d 482 (1982).

---

[1] Defendants/Movants Michael LeBlanc, Jerry Gottlieb, Richard Gottlieb, Richard Harbison, and Gary Copes are LCS officers and directors who were dismissed from this action by prior Order. D.E. 68. Defendant/Movant Rohrbaugh is deceased (D.E. 23) and no other party has been substituted to represent his estate. Defendant/Movants Daniel Slone and Warden Rudy Sanchez were voluntarily dismissed pursuant to the Plaintiffs' Second Amended Complaint (D.E. 50). It appears that Defendant Captain J. Galvan has not been served and has not appeared or answered. This Order, therefore, need not and does not specifically address the claims against those Defendants.

The utility of each test depends upon the factual context of the claim. First is the "public function" test which inquires whether the private party has exercised powers that are "traditionally the exclusive prerogative of the state." Second is the "state compulsion test" which applies when the state has exercised coercive power or has provided such significant encouragement, whether covert or overt, that the action of the private party must in law be deemed to be that of the state.[2] Third is the "nexus" test utilized where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself. *Id*.

The *Lugar* opinion candidly observed, "Whether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in such a situation need not be resolved here." The prevalent "public function" test is the ostensible basis for the parties' briefing. However, the "nexus" test is also relevant and is often applied in cases addressing privately operated prisons. *E.g.*, *Rosborough v. Management & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003) (*per curiam*; applying both the "public function" and "nexus" tests); *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 101-02 (6th Cir. 1991) (*per curiam*; same). Defendants' argument is that the "public function" test may be used to absolve those who would otherwise be "state actors" from § 1983 liability where the "public" element is related to federal rather than state government.

---

[2] Defendants focus on this test in their Reply (D.E. 70-1). However, this Court does not consider general state regulations of an industry to create "state action" here. The "state compulsion" test applies when the actual offending act is essentially dictated by the state. Plaintiffs have not raised any question that state regulation required the alleged understaffing, for instance.

The briefing reveals two United States District Court cases that held that the housing of a federal prisoner makes the jailors federal actors rather than state actors: *Garcia v. Niderhauser*, No. C-11-4 (S.D. Tex. August 5, 2011) (Crane, J.); *Sarro v. Cornell Corrections, Inc.*, 248 F.Supp.2d 52, 61 (D.R.I. 2003) (Torres, C.J.). Both opinions give determinative weight to the idea that "under color of state law" has been described in the "public function" test as the entity performing a function that is the ***exclusive*** province of the state, whereas the confinement of federal prisoners is the province of the federal government that convicted them. *Garcia, supra* at *7; *Sarro, supra* at 61. While the federal government may delegate that confinement function to a state or to a private party, the fact that the federal government has the original duty keeps the incarceration from being a matter "exclusively" consigned to the state. This Court respectfully disagrees with the opinions from these sister courts.

To consider jailors to be "federal actors" simply because they contractually take on the burden of housing federal prisoners conflicts with the United States Supreme Court opinion in *Logue v. United States*, 412 U.S. 521, 528-32, 93 S.Ct. 2215, 2221, 37 L.Ed.2d 121 (1973):

> [W]e are not persuaded that employees of a contractor with the Government, whose physical performance is not subject to governmental supervision, are to be treated as 'acting on behalf of' a federal agency simply because they are performing tasks that would otherwise be performed by salaried employees of the Government.

*Id*. 412 U.S. at 531-32. In that case, the contractor was Nueces County, Texas, operating its county jail. The fact that it housed a federal prisoner did not transform the County

into a federal actor for purposes of a wrongful death case brought by the prisoner's survivors after his suicide in County custody.  Neither should it transform a private operator of a detention center into a federal actor.

Judge Lagueux of the United States District Court of Rhode Island disagreed with Chief Judge Torres, who wrote the *Sarro* opinion.  *LaCedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp. 2d 114 (D.R.I. 2004) (Lagueux, J.).  Both cases involved the Donald Wyatt Detention Center (the Wyatt).  The State of Rhode Island had authorized municipalities to create public corporations to own and operate detention facilities.  The Wyatt was built with the intention to contract with the United States Marshals Service to house federal pretrial detainees.  However, it also occasionally housed state prisoners.  *Id*. at 121.  The public corporation contracted with a private corporation to operate the facility and employ the staff.

Where Chief Judge Torres had given dispositive force to the issue of the jurisdiction that convicted the prisoner, Judge Lagueux considered that fact irrelevant.  *Id*. at 140-41.  "The fact that Plaintiff was incarcerated at the Wyatt Facility while awaiting a federal trial is fortuitous because the officials who committed the alleged constitutional violations derived their authority over Plaintiff from state rather than federal law."  *Id*.  This is consistent with the "top down" language used by the Supreme Court:  "[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."  *Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).  *See also*, *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct.

2250, 101 L.Ed.2d 40 (1988); *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *Rosborough, supra* at 460.

This analysis is also consistent with cases that have not parceled out different remedies to prisoners in private detention facilities based on the jurisdiction that convicted them. *See generally*, *Skelton v. Pri-Cor, Inc*., 963 F.2d 100, 101-02 (6th Cir. 1991) (*per curiam*; federal prisoner in state privately-run facility stated § 1983 claim, federal status of prisoner was not made an issue); *Gabriel v. Corrections Corp. of America*, 211 F.Supp.2d 132, 137-38 (D.D.C. 2002) (federal prisoner in municipal custody stated § 1983 claim, federal status of prisoner was not made an issue); *Kesler v. King*, 29 F. Supp. 2d 356, 371 (S.D. Tex. 1998) (Missouri prisoner in Texas facility; no attempt to require any different treatment). It is the forum state that permits the operation of the facility and it is the forum state that clothes the jailors with authority to run the facility. The public function and its execution does not change based upon whether the prisoners are convicted in that state, another state, or federal court.

In the context of a Fed. R. Civ. P. Rule 12(b)(1) and 12(c) motion, the Court need not find, as a matter of fact, that LCS and its employees derived their authority from the State of Texas. It is enough that Plaintiffs have alleged that authority. Holding that the allegations of state authority are sufficient to support a § 1983 claim and that the federal status of the decedent's conviction is not determinative of the remedies available to his survivors, the Court DENIES the Motion (D.E. 37) insofar as it challenges the Plaintiffs' ability to make claims under 42 U.S.C. § 1983 and this Court's jurisdiction to adjudicate those claims.

## PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS
## TO SUPPORT § 1983 CLAIMS

Defendants argue that Plaintiffs' allegations of § 1983 claims do not survive the fact-based pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009). With respect to Defendant Captain Damon Thomas, Defendants claim that the factual allegations do not amount to a subjective awareness of a substantial risk of harm and conscious disregard of that risk which is required for a deliberate indifference claim. *See generally*, *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009), *cert. den.*, 130 S.Ct. 3368 (2010).

Defendants' motion was filed in response to Plaintiffs' First Amended Complaint (D.E. 4). In their Reply (D.E. 70-1), they challenge Plaintiffs' expanded allegations in their Second Amended Complaint (D.E. 50). The original allegation was that Defendant Thomas canceled a call for emergency medical services for Higgins. In the Second Amended Complaint, Plaintiffs provide additional factual detail including allegations that Thomas personally saw Higgins grab his chest, slide off his wheelchair onto the floor, turn cyanotic, and have his pupils become fixed and dilated. D.E. 50, pp. 7-8. Furthermore, Plaintiffs argue that knowledge of a substantial risk of serious harm can be inferred from obvious circumstances, citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The factual allegations are sufficient under *Twombly* and *Iqbal* standards.

With respect to LCS, Defendants first state that LCS cannot be liable without an underlying constitutional violation by one of its employees, citing *Hill v. Carroll County*,

8 / 12

587 F.3d 230, 238 (5th Cir. 2009). Having found the pleading against Defendant Thomas to be an adequate pleading of deliberate indifference in violation of United States Constitution Amend. VIII (cruel and unusual punishment) and XIV (due process), the Motion must be denied on this basis.

Additionally, Defendants challenge LCS' § 1983 liability, arguing that the Plaintiffs have not pled sufficient facts to show "supervisor liability" along the lines of "municipal liability" as required by *Connick v. Thompson*, 131 S.Ct. 1350 (2011). That measure of liability was set out in the landmark case of *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978):

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*. The question is whether the allegations are sufficient to support a finding that LCS decisionmakers had permitted the development of a policy or custom that caused the constitutional violations allegedly practiced on Higgins. Elements of the claim include showing that (1) a constitutional violation was occurring; (2) the policymaker was deliberately indifferent in adopting a related policy; and (3) the policy directly caused the subject injury. *See generally*, *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

Plaintiffs have alleged that LCS has a history of frequently violating Texas Commission on Jail Standards section 275 with respect to frequency of face-to-face inmate checks, the ratio of officers to inmates, and failure to hire properly qualified and licensed jailors, including preparation for medical emergencies. Plaintiffs allege that members of the LCS board of directors and management team have a policy or practice of understaffing their facilities despite knowledge of their Jail Standards violations and the predictable variations in inmate populations. D.E. 50, pp. 11-13. Plaintiffs have also alleged at least one other incident of LCS negligence causing the death of an inmate because of failure to provide emergency medical care allegedly due to understaffing or improper staffing. D.E. 50, p. 12. Plaintiffs allege that this understaffing caused LCS employees to fail to secure medical intervention for Higgins' needs.

The allegations are sufficient to survive a *Twombly/Iqbal* review of the pleadings. Plaintiffs have adequately stated causes of action against LCS and Thomas under § 1983. The Court DENIES the Motion (D.E. 37) to the extent that it challenges the sufficiency of the factual allegations to support the § 1983 claims.

### PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THAT THOMAS OWED HIGGINS A DUTY IN SUPPORT OF THEIR STATE LAW CLAIMS AGAINST HIM AS AN LCS EMPLOYEE

Citing *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996), Defendants claim that Plaintiffs have not stated a sufficient state law claim against Thomas because he did not owe Higgins a duty of care independent of his employer, LCS. "A corporate officer or agent can be liable to others, including other company employees, for his or her own negligence. However, individual liability arises only when the officer or agent owes an

independent duty of reasonable care to the injured party apart from the employer's duty." *Id*.

The corollary to the *Leitch* holding is: "A corporation's employee is personally liable for tortious acts which he directs or participates in during his employment." *Leyendecker & Assoc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984). Plaintiffs have alleged that, as the employee with direct custody over Higgins (who was unable to care for himself), Thomas owed an independent "high" duty of care to attend to Higgins' medical needs. D.E. 50, p. 15. "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates . . . .'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994).

More specifically, after alleging that Thomas observed Higgins collapse, Plaintiffs allege, among other things, Thomas' failure to determine Higgins' medical condition or physical problems and failing to call or canceling the call for emergency medical services. D.E. 50, p. 16. Plaintiffs have stated the breach of an independent duty of care. Defendants' request for dismissal of the claim based on the failure to allege a duty separate from LCS' corporate duty is DENIED.

## CONCLUSION

For the reasons set out above, Plaintiffs' Motion to File a Response (D.E. 69) is DENIED. Defendants' Motion to File a Reply (D.E. 70) is GRANTED and the Clerk is instructed to file the Reply (D.E. 70-1) as an independent document on the docket of this

case. Defendants' Rule 12(b)(1) Motion to Dismiss and Rule 12(c) Motion for Judgment on the Pleadings (D.E. 37) is DENIED in its entirety.

ORDERED this 4th day of February, 2013.

Nelva Gonzales Ramos

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE